No. 16-1221

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

NICO ELECTRICAL CONTRACTOR INC., ET AL
*Plaintiff-Appellants*

*v.*

CITY OF CAMDEN., ET AL
*Defendant-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
HONORABLE ANN MARIE DONIO, U.S.D.J.
CIVIL ACTION NO. 1:13-cv-06353

BRIEF & APPENDIX Of
PLAINTIFF APPELLANTS

David J. Khawam, Esq.                    NJ STATE BAR
*Counsel of Record*
LAW OFFICES OF DAVID J, KHAWAM, ESQUIRE, LLC
216 Haddon Avenue • Sentry Office Plaza • Suite 604
Westmont, New Jersey 08108
Tel.: (856) 858-1011

*Attorney for Plaintiff-Appellant, NICO ELECTRICAL INC., ET AL*

## TABLE OF CONTENTS

PAGE

Table of Authorities.........................................3-4

Jurisdictional Statement.......................................5

Statement of Issues Presented for Review.......................5

Statement of Related Cases and Proceedings.....................6

Statement of Case..............................................7

Statement of Facts.............................................8

Summary of Legal Argument.....................................11

Legal Argument................................................12

Standards of Review Applicable to Issues Raised...............12

Point 1.......................................................12

       The Elements of a Claim of Unconstitutional
       Retaliation..........................................12

Point 2.......................................................12

       It is Admitted That No Claims May Be
       Asserted for incidents That Occurred Before
       October 24, 2011. However, Same Still
       constitutes Background Evidence in Support
       of His Present Grievances............................14

Point 3.......................................................15

       Plaintiffs Did engage In Constitutionally
       Protected Conduct...................................15

Point 4    ..............................................18

      The Defendants Do Not Argue That the Actions
      of Which the Plaintiff Complains Could Not
      Constitute Retaliation...............................18

Point 5.................................................18

      Material Issues of Fact Exist as to Whether
      There was a Casual Connection Between the
      Protected Activity and the Retaliatory
      Actions  .........................................18

Point 6.................................................21

      Giving the Plaintiff All Reasonable
      Inferences a Jury Could Find that Co Rizzo
      and Dir. Afanador as Supervisors Acquiesced
      in the Conduct of the Inspectors....................21

Point 7.................................................22

      The Individual Defendants Are Not Entitled
      to Qualified Immunity...............................22

Point 8.................................................23

      Material Issues of Fact Exist as to Whether
      Camden Had a Custom of Hindering Nonunion
      Contractors Who Had Previously Been Union
      Members.............................................23

Conclusions and Relief Sought...........................25

Certificate of Compliance...............................26

Certificate of Membership...............................27

Certification that PDF Test and Hard Copy Text Are Identical...28

Certification That Virus Check was Performed............29

APPENDIX, VOLUME 1- (ATTACHED).........................30

Certification of Service................................33

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

Anderson v. Davilla,
125 F.3d 148, (3d Cir.1997)................................17,18

Anderson v. Creighton,
483 U.S. 635 (1987)........................................26

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, S.Ct. 2505, 91 L.Ed.2d 202 (1986)................16

Assaf v. Fields,
178 F3d 170 (3rd Cir. 1999) ..................................27

Connick v. Myers,
461 U.S. 138, S. Ct. 1684, 75 L.Ed2d 208 (1983)................20

C.N. v. Ridgewood Bd. of Educ.,
430 F.3d 159, (3d Cir. 2005)................................16

Farrell v. Planters Lifesavers Co.,
206 F.3d 271,(3d Cir. 2000)................................23

Harlow v. Fitzgerald,
457 U.S. 800, (1982).......................................26

Hill v. City of Scranton,
411 F.3d 118,(3d Cir. 2005)................................18

Krouse v. American Sterilizer Co.,
126 F.3d 494,(3rd Cir. 1997) ...............................23

Nat'l R.R. Passenger Corp. V. Morgan,
536 U.S. 101, S. Ct. 2061, 2072, 153 L.
Ed. 2d 106 (2002)..........................................19

Labov v. Lalley,
809 F.2d 220,(3d Cir.1987)................................17,19,20

Lauren W. Ex rel. Jean W. V. DeFlaminis,
480 F3d 259, 267 (3rd Cit. 2007) ...............................22

Lee v. The Cnty of Passaic,
No. 2:09-cv-5735 SDW, 2011 WL 3159130.........................20

Mitchell v. Horn,
318 F.3d 523, 530 (3rd Cir. 2003) ............................22

Monell v. Department of Social Services of City of New York,
436 U.S. 658,(1978).........................................27

Natale v. Camden County Correctional Facility,
318 F.3d 575,(3rd Cir., 2003)..............................27,28

O'Hare Truck Serv., Inc. v. City of Northlake,
518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996)..........17

Rode v. Dellarciprete,
845 F.2d 1195, (3d Cir. 1988)................................22

Smith v. Arkansas State Highway Emp., Local 1315,
441 U.S. 463, 99 S. Ct. 1826, 1828, 60 L.
Ed. 2d 360 (1979).........................................17,19

Sterling v. Borough of Minersville,
232 F.3d 190, (3rd Cir. 2000) ...............................26

Thomas v. Independence Twp,
463, F3d 285, 296 (3d Cir. 2006)............................22

Tolan v. Cotton,
134 S. Ct. 1861, 1863 (2014)................................16

Woodson v. Scott Paper Co.,
109 F3d 913, 920-21 (3d Cir. 1997)..........................23

**STATUTES**
Fed. R. Proc. 56...........................................16

**CONSTITUTIONAL PROVISIONS**

Protected and free Speech Clause of the 1st Amendment.........15

## Jurisdictional Statement

In this matter the Plaintiffs assert that they were deprived of their rights to association as guaranteed by the First Amendment and as a result thereof the Court has jurisdiction over Plaintiffs' claims pursuant to 38 U.S.C. §1331, as an action arising under the Constitution of the United States, and 28 U.S.C. §1343(A)(3), to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

Jurisdiction and Venue is properly laid pursuant to 28 U.S.C.§1391(b) in the District of New Jersey, because the defendants are located in this district, and the events giving rise to the claim occurred in this district. The case was dismissed through summary judgment in favor of Defendants and a notice of appeal was filed leaving this case for review properly in front of this Court

## Statement of Issues Presented for Review

1. Viewing the facts most favorably to the Plaintiffs, could a reasonable fact finder render a verdict in favor of the Plaintiffs on any of their claims of discrimination?

2.    Viewing the facts most favorably to the Plaintiffs, could a reasonable fact finder render a verdict in favor of the Plaintiffs on any of their claims of retaliation on account of protected rights?

## Statement of Related Cases and Proceedings

This case has not been before this Court previously nor is this party aware of any previously or pending appeals before this Court arising out of this case or proceeding.

## Statement of Case

The Plaintiffs', Nico Electrical Contractor, Inc., and Marshall B. Williams, herewith appeals to the United States Court of Appeals for the Third Circuit the order [District Court Document #29] entered in this matter on December 30, 2015, by the United States District Court for the District of New Jersey, granting the defendants' motion for summary judgment and dismissing with prejudice the complaint of the Plaintiff.

### Statement of Facts

Marshall Williams is an African-American electrician. Originally, he was a member of the International Brotherhood of Electrical Workers, whose business agent for many years was a politically connected individual, who is now a United States Congressman. In the early 2000's Marshall Williams decided to go into business for himself and formed Nico Electric, which has always remained a small company. Because his clients were of modest means and he could not afford to pay union scale wages, he elected to operate as a non-union contractor. This did not sit well with the IBEW business agent, who Marshal Williams actually knew from his days in high school. In any event there were occasions when the business agent would actually appear at Marshal Williams= house and give him static over his failure to affiliate with the union.

Marshall at first did not believe that his old acquaintance would actually retaliate against him, although his thinking in this regard changed after he was awarded an open ended contract to provide on request electrical services for the City of Camden. After signing the contract, which would have very lucrative, had he been called upon to provide serves, he received no requests for service. As a result, he contacted the chief financial officer of the City of Camden, a plain spoken individual, whose employment by

the City reached back into the 1960's and had existed through numerous administrations in Camden, including that of the Mayor, who went to the jail in the Abscam scandal. In any event, this individual, frankly told Marshall, that he would received no work, because this individual Ahad received hell from the IBEW for having awarded Marshall the contract.

Unfortunately Marshall originally accepted what had happened as plain Camden politics. Some years later, however, he arrived at a conclusion that he could no longer simply accept being retaliated against on account of his non-union status. This was triggered by the event sets forth in the complaint. Briefly, it is Marshall=s position that City Inspectors, who themselves were former IBEW members, still resented his status and engaged in activities to make life difficult for him. These actions involved rejecting his work and telling customers that they should retain other contractors. After he made formal complaints to the supervisors and received no relief he filed this lawsuit.

Marshall asserts that there are two crucial pieces of evidence that were overlooked by the District Court. First, he asserts that the statements made by the Chief Financial Officer of the City of Camden, even though they were made outside of the limitations period, nonetheless constituted a statement of policy

and direct evidence of a discriminatory intent towards nonunion contractors. Thus, this evidence was sufficient to at the very least meet the requirements of the fourth prong of the *prima facie case*. The second is that the inspectors violated state regulatory laws in the way that they rejected Marshall's work and that the violation of these laws, for which the inspectors have been unable to proffer any justification, constitutes evidence of pretext.

In regards to damages, Marshall admittedly suffers with an inability to prove the extent of same as the ripple effect of the objections of his projects and the statements by the inspectors is difficult to reasonably ascertain. In any event, as a result in checking revenue records, Marshall believes he has lost approximately $200,000.00 a year over 1,000,000.00 in residual business in income because of discriminatory acts of the defendants.

## Summary of Legal Argument

The Plaintiffs have presented sufficient evidence above from which the jury could find that Defendants' inadequate responses to Plaintiffs' numerous complaints of racial harassment, bullying and retaliation constituted unlawful discrimination and retaliation in violation of Title VI, the NJ LAD, Section 1981 and the Equal Protection Clause of the 14th Amendment.

The District Court erred in granting Summary Judgment.

## LEGAL ARGUMENT

### Standard of Review

A party is entitled to summary judgment if it can establish that there exist no issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Proc. 56. However, "[In] ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014). Quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, where a court fails to credit evidence that contradicts some of its key factual conclusions, it improperly weighs the evidence. Tolan v. Cotton, *id.* Finally, "summary judgment may not be granted, however, if there is a disagreement over what inferences can reasonably be drawn from the facts even if the facts are undisputed." C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005).

### Point 1

### The Elements of a Claim of Unconstitutional Retaliation

"The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove

that the government took action against him in retaliation for his exercise of First Amendment rights." Anderson v. Davilla, 125 F.3d 148, 160 (3d Cir.1997). Furthermore this encompasses a citizen's exercise of the right of association, O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 721, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996), and the right to be or not be a member of a union has been recognized as an associational right covered by the First Amendment. Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465, 99 S. Ct. 1826, 1828, 60 L. Ed. 2d 360 (1979).("The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so."). See also Labov v. Lalley, 809 F.2d 220, 222-23 (3d Cir.1987). ("Plainly efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the first amendment protects from hostile state action.")

In this matter Marshall Williams claims that because he chose to leave the IBEW and later work in the City of Camden as a nonunion contractor he suffered retaliation form the City and its officials on account of the political influence of the IBEW.[1] In order to

---

[1]It is a matter of judicial notice that Donald Norcross the Business Agent of the IBEW became a member of the New Jersey Legislature representing the City of Camden and more recently

prove this he must show that first, that he engaged in protected activity; second, that the City and /or its officials responded with retaliation; and third that his protected activity was the cause of the Government's retaliation.  Anderson v. Davila, *supra* at 161 (3d Cir. 1997); Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). As will be argued hereafter, Marshall Williams submits that he meets the first two elements as a matter of law and that material issues of fact exist as to the third element.

**Point 2**

**It Is Admitted That No Claims May by Asserted for Incidents That Occurred Before October 24, 2011, However, Same Still Constitute Background Evidence in Support of His Present Grievances.**

The Defendants are correct that "any incidents complained of by Plaintiffs that occurred prior to October 24, 2011 are barred by the applicable two (2) year statute of limitations." *Def. Brief pg. 19.* These incidents, however, are far from irrelevant to the present matter. This is because they establish a pattern of hostility against Marshall Williams on account of his nonunion status.  They also establish a custom of the City of Camden and its officials to placate the politically connected IBEW to the

---

has become a member of Congress with the City being part of the District that he represents.

detriment of nonunion contractors. Thus Marshall Williams was told by the CFO of Camden that he would receive no work, even though he had been given a contract, because the granting of the contract to him displeased Donald Norcross, the then Business Agent of the Union. Thereafter he had to endure a continuing series of issues with the City Inspectors, who were former members of the IBEW, and which issues continued past October 24, 2011.

In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002), the Supreme Court specifically found in the context of a Title VII claim that while prior discrete acts maybe barred by the relevant limitations periods they nonetheless maybe utilized by a claimant as background evidence. "Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.* Thus while Marshall Williams cannot seek redress for these prior acts, they still comprise (as well be argued later) an important component of his claims.

### Point 3

#### Plaintiffs Did Engage in Constitutionally Protected Conduct

In spite of the pronouncements set forth above from Smith v. Arkansas State Highway Emp., Local 1315, *supra*, and Labov v. Lalley, *supra*, the Defendants contend that Marshall Williams did

not engage in constitutionally protected conduct. They arrive at this, however, by conflating the status of Marshall Williams as a citizen with that of a public employee, which he is not, and his conduct as speech instead of an associational activity. That this is the case is demonstrated by a review of <u>Lee v. The County. of Passaic</u>, No. 2:09-CV-5735 SDW, 2011 WL 3159130, the unpublished opinion upon which they rely.  In that case the "protected conduct," with which the Court ultimately dealt, was speech by public employees. First the court cited to <u>Connick v. Myers</u>, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) for the proposition that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employees behavior." <u>Lee v. The County. of Passaic</u>, *id* at 3. Then the Court held that speech involved a private grievance and was therefore not a protected activity under the First Amendment. *Id at 4.* Finally the Court noted that other than the <u>speech</u>, the plaintiffs "have not presented this Court with a valid union activity that amounted to constitutionally protected conduct as required for a claim for

retaliatory action due to freedom of association. Thus, these claims also fail." *Id.*

In the present case Marshall Williams has in fact presented a valid associational activity - the conduct of leaving a union and working nonunion. As a result the Plaintiff has established the first element of his claim.

**Point 4**

**The Defendants Do Not Argue That the Actions of Which the Plaintiff Complains Could Not Constitute Retaliation.**

In order to meet the second element of a claim such as presented by Marshall Williams it must be established "that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir.2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003). It is submitted that actions such those of the inspectors in this case which adversely effected the profits of Marshall Williams' business, by in part demeaning him before his customers, meet this criteria. Apparently the Defendants by not claiming otherwise agree with this proposition. Therefore Marshall Williams has established as a matter of law the second element of his claim.

**Point 5**

**Material Issues of Fact Exist as to Whether There Was a Causal Connection Between the Protected Activity and the Retaliatory Actions.**

In regard to the third element the Third Circuit in Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) set forth the following guidelines:

> "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 503-*04 (3d Cir.1997); <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920-*21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 281 (3d Cir. 2000).[2]

In this case the record as a whole, which includes background evidence from before October 24, 2011, reflects the following evidence raising an inference of causation:

I.      Marshall Williams received a contract to do "on demand" work for the City but never received any such work;

II.     When he questioned the CFO about the work that high level official admitted that it was due directly to his nonunion status which had triggered the ire of Donald Norcross;

III.    Since that occurred the political status of Donald Norcross as grown exponentially;

---

[2]Specifically in <u>Farrell v. Planters Lifesavers Co.</u>, *id,* the Court stated the evidence reflecting upon causation, "is not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus. Rather, it can be other evidence gleaned from the record as a whole from which causation can be inferred."

IV.          Since that time the Plaintiff has had persistent issues with the City's inspectors all of whom are former IBEW members;

V.           Over the years said inspectors have made comments about the Plaintiff's nonunion status;

VI.          Assuming as we must that the inspectors made disparaging remarks to the Plaintiff's customers, they have provided no explanation for such remarks;

VII.         It is established beyond issue that the inspectors would reject work without properly citing the reasons therefore and no explanation for such conduct has been forthcoming;

VIII.        Assuming as we must that the inspectors suggested that customers of the Plaintiff use other contractors, they have provided no explanation for such statements; and,

IX.          The inspectors admit they would fail work performed by the Plaintiff and then when confronted by Plaintiff change their position which raises the question of why presumably competent government officials would have failed the work in the first place.

It is therefore submitted that material issues of fact exist as to causation and that same must be resolved by a jury.


### Point 6

**Giving the Plaintiff All Reasonable Inferences a Jury Could Find That CO Rizzo and Dir. Afanador as Supervisors Acquiesced in the Conduct of the Inspectors.**

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode</u>

v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). It is beyond issue that Marshall Williams complained to the supervisors as to the treatment he received from the inspectors. Although he didn't say the magical words that "I think they are doing this to me because I'm nonunion," the specifics of what they were doing, if not the motive, was set forth. It also is a fact that the supervisors claim they looked into what Marshall Williams was gripping about but apparently got no specific answers and conducted a most cursory investigation. In the case of Dir. Afanador she has a remarkable inability to even recall what occurred.

It is submitted that at the very least where a supervisor receives allegations of wrong doing and then never gets to the bottom of them or avoids getting to the bottom, then the inference arises that in her mind there must be a realization that whatever, the reasons for the conduct, those reasons are probably illegal. Furthermore another inference is that after inquiry the supervisor actually learns of the real reasons and then amnesia sets in. Which ever case such conduct by supervisors constitutes knowledge and acquiescence.

### Point 7

**The Individual Defendants Are Not Entitled to Qualified Immunity.**

The defense of Qualified Immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a right is clearly established is determined by whether "its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right." Sterling v. Borough of Minersville, 232 F.3d 190, 193 (3rd Cir. 2000). Although the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right, "this is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful." Anderson v. Creighton, 483 U.S. 635, 639 (1987); since to require precise factual correspondence between a case at issue and a previous case would permit "officials one liability-free violation of a constitutional or statutory requirement." Assaf v. Fields, 178 F3d 170, 178 (3rd Cir. 1999).

As set forth previously the law is clearly established that decisions to be in or not in a union involve associational rights protected by the First Amendment. That being the case any

reasonable public official should know that he cannot take actions against a citizen on account of the citizen's status in regard to a union. The Defendants are therefore not entitled to Qualified Immunity.

### Point 8

**Material Issues of Fact Exist as to Whether Camden Had a Custom of  Hindering Nonunion Contractors Who Had Previously Been Union Members.**

To impose liability upon a governmental entity a plaintiff must then establish that, "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978); or, Involves the acts of a government employee that "may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3rd Cir., 2003). In that latter circumstance of employee action there are three situations where such action may be deemed that of the entity. "The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of

that policy.  The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." <u>Natale v. Camden County Correctional Facility</u>, *id.*

In this case the first and third situations referred to in <u>Natale</u> are present. Based upon the statements of the CFO a jury could conclude that high level Camden officials implemented a policy adverse to nonunion contractors so as to avoid the displeasure of Donald Norcross.  In addition a jury could conclude that the supervisors failure to address the Plaintiff's long standing complaints constituted a practice likely to result in the violation of constitutional rights.  As a result the City should not be dismissed from this matter.

## **CONCLUSIONS AND RELIEF SOUGHT**

For the foregoing reasons it is respectfully requested that the Court reverse the District Court=s order granting Defendant's motion for summary judgment and remand this matter for a trial.

RESPECTFULLY SUBMITTED,

David J. Khawam, Esquire
Attorney for the Appellee
Nico Electrical Contractor Inc, ET AL

**s/David J. Khawam, Esquire**
BY: David J. Khawam, Esquire

Dated:  April 20th, 2017

## CERTIFICATE OF COMPLIANCE

I hereby certify that the Brief of Appellees, Attorney for the Appellees, Nico Electrical Contractor Inc, et al, complies with Fed. R. App. P. 32(a)(7)(B) as the brief contains 3643 words, exclusive of tables and certificates of counsel.

David J. Khawam, Esquire
Attorney for the Appellee
Nico Electrical Contractor Inc, Et Al

**s/David J. Khawam, Esquire**
BY: David J. Khawam, Esquire

Dated:  April 20th, 2017

### CERTIFICATE OF MEMBERSHIP

The undersigned herewith certifies that he is a member of the Bar of the United States Court of Appeals for the Third Circuit, having been admitted on July 20, 2007.


David J. Khawam, Esquire
Attorney for the Appellee
Nico Electrical Contractor Inc, Et Al

**s/David J. Khawam, Esquire**
BY: David J. Khawam, Esquire


Dated:  April 20th, 2017

**CERTIFICATION THAT PDF TEST AND HARD COPY TEST ARE IDENTICAL**

I, David J. Khawam, Esquire, as a member of the bar of this Honorable court hereby certify that the text of the Brief of Appellees, Nico Electrical Contractor Inc, et al, is identical in both hard copy and the pdf format submitted to the court electronically.


David J. Khawam, Esquire
Attorney for the Appellee
Nico Electrical Contractor Inc, Et Al

**s/David J. Khawam, Esquire**
BY: David J. Khawam, Esquire


Dated:  April 20th, 2017

## **CERTIFICATION THAT VIRUS CHECK WAS PERFORMED**

I have scanned the pdf version of Appellant=s Brief for viruses and no viruses were detected. I used the current version of AVG Anti Virus Protection to check for viruses.


David J. Khawam, Esquire
Attorney for the Appellee
Nico Electrical Contractor Inc, Et Al

**s/David J. Khawam, Esquire**
BY: David J. Khawam, Esquire


Dated:  April 20th, 2017

**CERTIFICATION OF SERVICE**

I hereby certify that the revisedBrief of Appellee, Nico Electrical Contractor Inc, et al, was electronically filed with the Court on April 27th, 2017 and is immediately accessible to counsel of record in its electronic format.  I further certify that hard copies of the Brief of Nico Electrical Contractor Inc, et al, was served as follows:

**(Original & 6 Copies of Brief and 4 copies of the Appendix Volume 1 & 2 – Priority Mail)**
Marcial M. Waldron, Clerk
U.S. Court of Appeals
for the Third Circuit
U.S. Courthouse, Room 21400
601 Market St.
Philadelphia, PA 19106

**(With 2 copies of Brief & Appendix)**
John C. Eastlack, Jr., Esquire
Daniel E. Rybeck, Esquire
Weir & Partners LLP
215 Fries Mill Road
Turnersville, NJ 08012

David J. Khawam, Esquire
Attorney for the Appellee
Nico Electrical Contractor Inc, et al

**s/David J. Khawam, Esquire**
BY: David J. Khawam, Esquire

Dated:  April 27th, 2017